**Bruce F. Howell**, OSB #112306
Email: bhowell@schwabe.com
**Nicholas F. Aldrich**, OSB #160306
Email: naldrich@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

      Attorneys for Plaintiffs


## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ASKLEPIOS HEALTH, LLC**, a Washington limited liability company; **MERIDIAN PARK RADIATION ONCOLOGY CENTER, INC.**, an Oregon corporation; and **IVAN PAVLOV**, an individual, | Case No.: 3:18-cv-1177 |
|     Plaintiffs, | **COMPLAINT**<br><br>**(DECLARATORY JUDGMENT)** |
|   vs. | |
| **RADIATION ONCOLOGY SPECIALISTS, P.C.**, an Oregon professional corporation; **NORMAN WILLIS, MD**, an individual; **ROBERT MILLER**, an individual; **TANA MILLER**, an individual; and **MARTIN FUSS, MD**, an individual. | |
|     Defendants. | |

Plaintiffs Asklepios Health LLC, a Washington limited liability company ("Asklepios "),

MPROC, Inc., an Oregon corporation ("MPROC") and Ivan Pavlov ("Pavlov") (collectively

Page 1 -   COMPLAINT FOR DECLARATORY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

"Plaintiffs"), through counsel, hereby bring this Complaint for Declaratory Judgment against Norman Willis, MD ("Willis"), Martin Fuss, MD ("Fuss"), Tana Miller ("T. Miller"), and Robert Miller, PhD ("R. Miller") (collectively "Defendants"), and allege as follows:

## INTRODUCTION

1.      This is a declaratory judgment action seeking a declaration that states whether the agreements that accomplished the Transaction described herein, as well as documents that preceded the Transaction, violate the Federal Anti-Kickback Statute and, as a consequence thereof, the False Claims Act.

## JURISDICTION AND VENUE

2.      This Complaint arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b (hereinafter "AKS"), and the False Claims Act, 31 U.S.C. § 3729 (hereinafter "FCA").

3.      This Court has original jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Willis, Fuss, T. Miller and R. Miller because each conducts business and resides within the State of Oregon and within this judicial district, and jurisdiction over ROSPC because it conducts business within the State of Oregon and within this judicial district.

5.      This Court has personal jurisdiction over Pavlov because he conducts business and resides within the State of Oregon and within this judicial district, and jurisdiction over Asklepios because it conducts business within the State of Oregon and within this judicial district.

6.      Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), 1400(b).

## THE PARTIES

7.      Asklepios is a Washington Limited Liability Company. Its owner and sole member is Ivan Pavlov ("Pavlov").

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

8.      Pavlov is an individual who resides in Oregon, and is the owner and sole member of Asklepios.

9.      Meridian Park Radiation Oncology Center, Inc. ("MPROC"), is an Oregon business corporation that, prior to the events described and analyzed herein, was owned by ROSPC, and that houses the equipment, supplies, and staff (collectively the "Resources") required to furnish radiation oncology services ("Services") to patients on behalf of radiation oncology physicians.

10.     Radiation Oncology Services, P.C. ("ROSPC"), an Oregon Professional Corporation, is a medical practice comprised of radiation oncology physicians and associated professionals that, prior to the events described and analyzed herein, owned and contracted on an exclusive basis with MPROC to use the Resources in order to provide Services to ROSPC's patients.

11.     Norman Willis, MD ("Willis") is a licensed radiation oncology physician who practices in Oregon and who, prior to the events described herein, owned and operated both ROSPC and MPROC.

12.     Robert Miller, MS MBA ("R. Miller") is a medical physicist working in the field of radiation oncology and an owner of ROSPC.

13.     Tana Miller ("T. Miller") is the wife of R. Miller and, prior to the events described herein, an owner of MPROC.

14.     Martin Fuss, MD ("Fuss") is a radiation oncology physician who practices in Oregon. According to the Oregon Medical Board's website, prior to November of 2014, Fuss held limited practice licensure in Oregon, first as a visiting professor from 2006 to 2008, and then as academic medical faculty from 2008 to 2014, with no licensure reflected in 2012.

## PRESENT LITIGATION

15.     As further described below, the Parties entered into multiple agreements during 2015 through which Asklepios purchased MPROC from ROSPC; Fuss obtained an unvested ownership interest in Asklepios; ROSPC continued to provide professional services to ROSPC

Page 3 -    COMPLAINT FOR DECLARATORY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

patients at MPROC using MPROC's Resources; MPROC continued to provide billing services to ROSPC; and Asklepios agreed, with Pavlov's personal guarantee, to make goodwill payments to Willis and R. Miller (collectively, the "Transaction"). After a dispute regarding certain referral and billing practices, on December 6, 2016 Asklepios issued termination notices to ROSPC and Fuss.

16.     The notice to ROSPC stated that MPROC was invoking the 90 day termination provision, so that the Services Agreement would terminate on March 7, 2017. The notice to Fuss stated that Asklepios had terminated the Services Agreement, so that Asklepios no longer required Fuss' services after March 7, 2017. This notice also stated that because of the termination of services, Fuss' future membership units in Asklepios would automatically forfeit to Asklepios.

17.     Citing the actions noted above, on February 21, 2017, ROSPC, Willis, R. Miller, T. Miller, Fuss, and MPROC, LLC (not a party to this Complaint) filed suit in the Circuit Court of Oregon (the "State Court Action") against MPROC, Asklepios, and Pavlov, alleging (i) intentional interference with economic relations, requesting damages not less than $7,500,000; (ii) breach of contract, requesting damages not less than $2,900,000; and (iii) breach of good faith and fair dealing, requesting damages not less than $2,900,000; and requesting rescission and an order compelling arbitration.

18.     The dispute proceeded to arbitration.

19.     Subsequently, Asklepios determined that the agreements that preceded the Transaction and that accomplished the Transaction violated the AKS, and thereby violated the FCA.

20.     Plaintiffs have been unable to raise the agreements' illegality under applicable federal laws as a defense in the pending State Court Action and arbitration.

21.     Plaintiffs' inability to argue illegality in the State Court Action and arbitration placed Plaintiffs in the dangerous and untenable position of defending, as the Respondent in the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

State Court Action and the arbitration, arrangements that may be illegal under the AKS and thereby, the FCA.

22.     Of immediate and emergent concern, a decision was issued in the arbitration decision ("Decision") on May 11, 2018 that, if reduced to judgment, will require Plaintiffs to make one or more payments that, if the underlying agreements are illegal under AKS, would violate federal criminal statutes including the AKS and the FCA.

### The Transaction[1]

23.     In June of 2015, Pavlov (on behalf of Asklepios) and Fuss initiated discussions with Willis and Miller to acquire MPROC from ROSPC (the "Acquisition"). On July 27, 2015, the parties signed a Letter of Intent outlining the detailed terms of Asklepios' acquisition of MPROC, Inc. The Acquisition closed on October 1, 2015 and included the following (collectively, the "Acquisition Agreements"):

   a.      Stock Purchase Agreement, through which Asklepios purchased 100% of MPROC stock from Willis, R. Miller and T. Miller;

   b.      Goodwill Purchase Agreement, through which Willis and R. Miller were to be paid certain amounts contingent upon MPROC's revenue performance;

   c.      Guaranty Agreement signed by Pavlov personally guaranteeing the goodwill payments to Willis and R. Miller;

   d.      Services Agreement for ROSPC to provide professional services to MPROC and MPROC to provide billing services to ROSPC; and

   e.      Employment contracts for Miller (with MPROC) and Fuss (with ROSPC).

24.     These Acquisition Agreements included the following provisions:

---

[1]   ATTACHMENT 1 of this Complaint contains a chart entitled "MPROC/ROSPC/PHYSICIAN PAYMENTS."

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

a.      The Stock Purchase Agreement sets a total purchase price for
        MPROC shares at One Hundred Seventy-Four Thousand Seven
        Hundred Seventy-One Dollars ($174,771). On behalf of Asklepios,
        Pavlov obtained a valuation from Markee Valuations, LLC to
        determine fair market value for the entity. Markee Valuations,
        LLC is a two-person valuation firm that lists a single health care
        valuation in its experience.

b.      The Goodwill Purchase Agreement set a purchase price for
        goodwill of $350,000.00. Of that total, $100,000 was allocated to
        MPROC goodwill, and $250,000 was allocated as personal
        goodwill attributed to R. Miller and Willis. On behalf of
        Asklepios, Pavlov obtained a valuation from Markee Valuations,
        LLC to determine fair market value for the entity and any
        goodwill.

c.      Payment of amounts due under the Goodwill Purchase Agreement
        was contingent on R. Miller's and Willis' attainment of annual
        total revenue targets at MPROC. The Goodwill Purchase
        Agreement also permitted the payment of pro rata amounts, should
        the full total revenue target be partially achieved.

(1)     The Guaranty Agreement states that Pavlov "unconditionally and
        irrevocably guarantees" payment of the earn out payments under
        the Goodwill Purchase Agreement, and states, ineffectually, that
        payments will be made "regardless of any law, regulation, or order
        now or hereafter in effect in any jurisdiction." The Guaranty
        Agreement also states that [Willis and R. Miller] have no duty to
        advise Pavlov of information regarding any condition or
        circumstance bearing on any risk of nonpayment that diligent

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

inquiry would reveal, and that Pavlov waives any requirement that [Willis and R. Miller] in any way secure, perfect, or insure any security interest in the earn-out payments.

d.   Willis would sell a portion of the ownership of ROSPC to Fuss, who would become a shareholder of ROSPC and an employed physician at ROSPC.

e.   R. Miller would continue to be employed by MPROC as its medical physicist and clinic CEO.

f.   Key employees (including Willis) would be bound by non-compete provisions effective for three years after the closing date of the transaction.

25.   By separate agreement and prior to the acquisition of MPROC, Asklepios and Fuss executed a Restricted Unit Grant Agreement ("RUGA"), whereby Asklepios agreed to grant a 20% future ownership interest in Asklepios to Fuss. Payment for this ownership interest was not required at the time the RUGA was executed; rather, ownership would be granted once MPROC produced sufficient revenues to repay Asklepios' investment, $1.5 million (collectively, Acquisition Agreements and the RUGA are the "Transaction Agreements").

26.   During the course of Asklepios' ownership of MPROC, the following payments and credits occurred:

a.   Distributions paid to Asklepios as the single LLC member;

b.   Management fees totaling $1.125 million between October, 2015 and March, 2017; and

c.   Credits toward Fuss' unvested ownership interest, such credits equal to the distributions to Pavlov.

There was no management services agreement between MPROC and Asklepios, and no analysis performed to determine the fair market value of management services provided by Asklepios to MPROC.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

27.     Additionally, by virtue of ROSPC's prior ownership and operation of MPROC, there was in place at the time of closing a service agreement ("Service Agreement") that had been in effect since October 22, 2007. Through the Service Agreement, MPROC provided (i) the Resources for use by ROSPC physicians in furnishing Services to their patients, and (ii) billing services for ROSPC physicians; and ROSPC physicians provided professional services to ROSPC patients at MPROC. Beginning in 2007, MPROC billed for both technical/facility fees and the physicians' professional fees, and paid ROSPC twenty percent (20%) of MPROC's net revenues as compensation under the agreement. This Service Agreement, which was retained when Asklepios acquired MPROC, included a provision permitting either party to terminate the Service Agreement upon ninety (90) days' notice to the other party.

28.     Fuss and Willis were employed by ROSPC and were the only two physicians who furnished professional services at MPROC. Fuss made 63.9% of the total referrals to MPROC, and Willis made 36.1% of the total referrals to MPROC.

29.     Upon information and belief, a significant consideration in the acquisition of MPROC was maintaining and growing the existing referral stream from Willis, who owned and referred his patients to MPROC prior to the Transaction.

30.     Upon information and belief, MPROC's financial performance during the six years prior to the Transaction had been in decline.

31.     Upon information and belief, MPROC was using old and outmoded equipment to provide radiation oncology treatment to its patients.

32.     The Goodwill Purchase Agreement contained the following terms

a.     70% of the purchase price was due at closing. The remaining 30% was subject to a three year "earn-out," which required that, for the 30% remainder to become payable, Fuss and Willis ensure that MPROC achieved defined annual monetary targets during the three year period following the closing.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

     b.    Willis would continue to be employed by ROSPC for a minimum of three years after the closing of the transaction.

     c.    Willis would sell a portion of the ownership of ROSPC to Fuss.  Fuss was to become an equal shareholder of ROSPC and an employed physician for a minimum of three years after the closing of the transaction.

     d.    R. Miller would continue to be employed by MPROC as its medical physicist for a period of at least two years after the closing of the transaction.

33.    Although ROSPC was not a signatory to the Acquisition Agreements, ROSPC is a third-party beneficiary to the Transaction.

34.    For example, ROSPC was mentioned throughout the Acquisition Agreements, conferring both benefits and obligations on ROSPC as follows:

     a.    In Section 3.3 of the Stock Purchase Agreement, Asklepios agreed to pay ROSPC 20% of all MPROC's net collections on a monthly basis going forward;

     b.    In Section 9 of the Letter of Intent, the parties clarified that the Services Agreement provision to pay 20% of net collections would last "for a minimum of three years after the . . . [c ]losing [ d]ate."

     c.    In Section 10.5, 10.8 and 10.10 of the Stock Purchase Agreement and the Goodwill Purchase Agreement, Defendants agreed that ROSPC would employ Willis for at least three years with a non-compete provision to be detailed in his employment agreement.

35.    Although Fuss was not a signatory to the Acquisition Agreements, Fuss is a third-party beneficiary of those documents.

36.    For example, Fuss was mentioned throughout the Acquisition Agreements, conferring both benefits and obligations on him:

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

a.  In Section 10.8 of the Stock Purchase Agreement and the Goodwill Purchase Agreement, Willis, R. Miller and T. Miller agreed that Fuss would become a shareholder owner and an employee of ROSPC for a minimum of three years after the closing date.

b.  On the closing date of the Transaction, Willis executed a Stock Certificate making Fuss a shareholder of ROSPC.

c.  On the closing date of the Transaction, Willis executed an Employment Agreement making Fuss an employed physician at ROSPC.

37.  Upon information and belief, the relationships established by the Acquisition Agreements were very profitable, so that Willis and R. Miller received their first year's goodwill payment.

## The Anti-Kickback Statute

38.  The AKS is a criminal statute that reads in relevant part as follows:

Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind -

(A)  in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B)  in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony[.]

42 U.S.C. § 1320a-7b(b)(1).

39.  Any physician order that purchases an item or provides a service that may be paid under a federal health care program is a "referral" under the AKS. *See U. S. v. Patel*, 778 F.3d

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

607 (7th Cir. 2015). "Remuneration" is anything of value, in any form, in cash or in kind. 42 U.S.C. 1320a–7a(i)(6). Actual knowledge of an AKS violation, or the specific intent to commit a violation of the AKS, is not necessary for conviction under the statute. The Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 6402(f)(2), 124 Stat 119 (2010).

## THE FALSE CLAIMS ACT

40.     The False Claims Act ("FCA") provides, in pertinent part, that: (a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government;. . . or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . . . (b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729.

41.     A violation of the AKS is a *per se* violation of the FCA. 42 U.S.C. § 1320a-7b(g).

## TRANSACTION AGREEMENTS VIOLATE THE AKS AND FCA

42.     The RUGA, the Goodwill Purchase Agreement, the Guaranty Agreement and the Services Agreement violate the AKS and, consequently, the FCA.

43.     For example, the RUGA grants a future 20% ownership interest to a physician who refers to MPROC, and requires that, for that ownership interest to vest, the referring physician must accumulate sufficient credit (allocated to the physician using the formula

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

"MPROC net revenues – distributions") to repay Asklepios' investment in MPROC. The referring physician can thus speed the vesting of his ownership interest by increasing the volume or value of his referrals to MPROC. Remuneration to the physician, here in the form of ownership in Asklepios, thus varies with the volume or value of his referrals to MPROC.

44.     Such terms violate the AKS, and thus the FCA.

45.     The Goodwill Purchase Agreement requires goodwill payments to the referring physician and physicist that are directly contingent on MPROC's achievement of defined revenue targets, so that physicians can directly increase their income by increasing referrals; thus, payments to the physician and physicist vary with the volume or value of their referrals.

46.     Such terms violate the AKS, and thus the FCA.

47.     Since 2007, the Services Agreement has required compensation to referring physicians at the rate of 20% of MPROC's net revenues, an amount that (i) varies with the volume or value of physicians' referrals, so that physicians can directly increase their income by increasing referrals, and (ii) therefore is not fair market value.

48.     Such terms violate the AKS, and thus the FCA.

49.     Such terms violated the AKS, and thus the FCA, prior to the Transaction.

50.     The Guaranty Agreement requires payment of goodwill amounts even if those payments violate the law.

51.     Such terms violate the AKS, and thus the FCA.

52.     Upon information and belief, the intent of the Transaction from its outset was to secure and grow a continuing referral stream for MPROC, which is a violation of the AKS.

53.     None of the RUGA, the Goodwill Purchase Agreement, the Guaranty Agreement and the Services Agreement qualifies for safe harbor protection under the AKS.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## COUNT I

## DECLARATORY JUDGMENT

### (Illegality of the RUGA)

### (Fuss)

54.     Asklepios repeats and realleges each of the allegations in paragraphs 1-53 as if fully set forth herein.

55.     There is a substantial and continuing controversy between Asklepios and Defendant Fuss, including a Decision in the current litigation that seeks to force Asklepios to make payments to Fuss that will violate the AKS, and a declaration of rights is both necessary and appropriate to establish that no such payments may be made.

56.     The RUGA violates the AKS.

57.     The RUGA violates the FCA.

58.     Asklepios' injury with respect to the RUGA can be redressed only by a finding that the RUGA violates federal laws.

## COUNT II

## DECLARATORY JUDGMENT

### (Illegality of the Goodwill Purchase Agreement)

### (Willis and R. Miller)

59.     Asklepios repeats and realleges each of the allegations in paragraphs 1-53 as if fully set forth herein.

60.     There is a substantial and continuing controversy between Asklepios and Defendants Willis and R. Miller, including a Decision in the current litigation that seeks to force Asklepios to make payments that will violate the AKS, and a declaration of rights is both necessary and appropriate to establish that no such payments may be made.

61.     The Goodwill Purchase Agreement violates the AKS.

62.     The Goodwill Purchase Agreement violates the FCA.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

63.     Asklepios' injury with respect to the Goodwill Purchase Agreement can be redressed only by a finding that the Goodwill Purchase Agreement violates federal laws.

## COUNT III

## DECLARATORY JUDGMENT

### (Illegality of the Services Agreement)

### (ROSPC, Fuss, Willis, R. Miller)

64.     Asklepios repeats and realleges each of the allegations in paragraphs 1-53 as if fully set forth herein.

65.     There is a substantial and continuing controversy between Asklepios and Defendants ROSPC, Fuss, Willis, and R. Miller, including a Decision in the current litigation that seeks either to force Asklepios to make payments that will violate the AKS, or a rescission of the Transaction, which would restore ROSPC, Fuss, Willis and R. Miller to a prior status that would violate the AKS. A declaration of rights is both necessary and appropriate to establish that no such payments may be made, and that no such rescission may be made.

66.     The Services Agreement violates the AKS.

67.     The Services Agreement violates the FCA.

68.     Asklepios' injury with respect to the Services Agreement can be redressed only by a finding that the Services Agreement violates federal laws, and that it violated federal laws prior to the Transaction.

## COUNT IV

## DECLARATORY JUDGMENT

### (Illegality of the Guaranty Agreement)

### (Willis, Miller)

69.     Plaintiff Pavlov repeats and realleges each of the allegations in paragraphs 1-53 as if fully set forth herein.

70.     There is a substantial and continuing controversy between Pavlov and Defendants Willis and Miller, including a Decision in the current litigation that seeks to force Pavlov to

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

make payments that will violate the AKS, and a declaration of rights is both necessary and appropriate to establish that no such payments may be made.

71.     The Guaranty Agreement violates the AKS.

72.     The Guaranty Agreement violates the FCA.

73.     Pavlov's injury with respect to the Guaranty Agreement can be redressed only by a finding that the Guaranty Agreement violates federal laws.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court enter judgment as follows:

A.     Declaring that the RUGA violates the Federal AKS and, consequently, the FCA;

B.     Declaring that the Goodwill Purchase Agreement violates the Federal AKS and, consequently, the FCA;

C.     Declaring that the Services Agreement violates the Federal AKS and, consequently, the FCA;

D.     Declaring that the Services Agreement violated the Federal AKS and, consequently, the FCA prior to the Transaction;

E.     Declaring that the Stock Purchase Agreement violates the Federal AKS and, consequently, the FCA;

F.     Declaring that the Guaranty Agreement violates the Federal AKS and, consequently, the FCA;

G.     Granting such preliminary and permanent injunctive relief as is necessary to prevent Defendants from enforcing or collecting funds pursuant to the above-mentioned Transaction Agreements through the State Court Action or the Arbitration pending a decision concerning the illegality of the documents in this Court;

H.     Granting such preliminary and permanent injunctive relief as is necessary to prevent Defendants from rescinding the Transaction through the State Court Action or the Arbitration pending a decision concerning the illegality of the documents in this Court;

I.     Awarding Plaintiffs their costs, expenses and reasonable attorneys' fees;

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

J.      Awarding Plaintiffs such other relief that the Court deems just and proper under the circumstances.

Dated this 2nd day of July, 2018.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.

By:      s/ Bruce F. Howell
         Bruce F. Howell, OSB #112306
         Email: bhowell@schwabe.com
         Nicholas F. Aldrich, OSB #160306
         Email: naldrich@schwabe.com
         Telephone: 503.222.9981
         Facsimile: 503.796.2900

         Attorneys for Plaintiffs

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**ATTACHMENT 1**

# MPROC/ROSPC/PHYSICIAN PAYMENTS
## (Red Text Denotes Possible Illegal Payments under the Anti-Kickback Statute)

**APPLICABLE AGREEMENTS**

| | |
|---|---|
| **Stock Purchase Agreement:** | Radiation oncology treatment center valued at $174,771 (valuation questionable) |
| **Goodwill Purchase Agreement:** | **Goodwill valued at $350,000, $100k MPROC and $250k personal Payments contingent on achievement of revenue targets** |
| **Services Agreement:** | **Referring physicians receive 20% of net MPROC revenues** |
| **Guaranty Agreement:** | **Pavlov unconditionally guarantees goodwill payments regardless of law** |

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900